UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CMGK, LLC d/b/a MASSAGE ENVY, a New Jersey Limited Liability Co., | |
| Plaintiff, | Civil Action No. 1:21-cv-02289 |
| v. | OPINION |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER ME100504 and DOES 1-100 | |
| Defendant. | |

This matter comes before the Court on Plaintiff's Motion to Remand the case back to the Superior Court of New Jersey, Law Division, Atlantic County. Pursuant to Fed. R. Civ. P. 78 (b), the Court has considered the written submissions of the parties and concluded, for the reasons set forth below, that Plaintiff's Motion to Remand is GRANTED.

## I.     Factual Background

This case arises from an insurance coverage dispute. On March 9, 2018, Plaintiff CMGK, LLC d/b/a Massage Envy ("CMGK"), a beauty spa in Mays Landing, New Jersey, purchased professional liability insurance from Defendant Certain Underwriters at Lloyd's London Subscribing to Policy Number ME100504 ("Lloyd's"). Dkt. 7-1 at 2. The policy included a "Sexual Acts Liability" provision, which supplied coverage for "Sexual Injury arising out of any Sexual Act," provided that CMGK had "no knowledge of the Sexual Act" prior to the effective date of the policy. Dkt. 12 at 3.

1

On September 4, 2018, a former customer of CMGK filed suit, alleging that one of CMGK's employees had perpetrated a sexual act against her during a 2017 massage. Dkt. 7-1 at 2; Dkt. 12 at 2. CMGK reported the claim to Lloyd's, requesting defense and indemnification; however, Lloyd's refused on both fronts, asserting that CMGK was "indisputably aware of the sexual assault . . . long prior to the effective date of the policy." Dkt. 12 at 3.

CMGK responded by filing the instant suit in the Superior Court of New Jersey, Law Division, Atlantic County, seeking, among other things, a declaration that Lloyd's is obligated to defend and indemnify against the sexual assault suit. Dkt. 7-1 at 3. Lloyd's removed the suit to this Court, resulting in CMGK filing the Motion to Remand which is now at issue.

## II.  Legal Standard

Federal courts have limited jurisdiction. <u>Zambelli Fireworks Mfg. Co., Inc. v. Wood</u>, 592 F.3d 412, 418 (3d Cir. 2010). After being removed to federal court, a case must be remanded back to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).[1] The removing defendant, at all times during litigation, bears the "heavy burden" of proving that no jurisdictional defect exists. <u>Brown v. Jevic</u>, 575 F.3d 322, 326 (3d Cir. 2009) (citing <u>Packard v. Provident Nat'l Bank</u>, 994 F.2d 1039, 1045 (3d Cir. 1993)). Removal

---

[1] A plaintiff can move to have a case remanded in two situations: (1) when there is a procedural defect with the removal procedure to which plaintiff objects within 30 days of the removal, and (2) if the court lacks subject matter jurisdiction, which can be raised at any time and cannot be waived. 28 U.S.C. § 1447(c).

must be "strictly construed, with all doubts . . . resolved in favor of remand." Id. (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992)).

### III. Discussion

The question before this Court is whether subject matter jurisdiction is present through diversity of citizenship. Section 1332(a) states, in relevant part, that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).

**A. Diversity of Citizenship**

The citizenship of parties is determined based on the relevant facts at the time a complaint is filed. Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir. 2011) (citing S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 414 n. 2 (3d Cir. 1999)). In Strawbridge v. Curtiss, 7 U.S. 267 (1806), the Supreme Court interpreted the original Judiciary Act's diversity provision as requiring complete diversity of citizenship. Ever since, diversity jurisdiction is only found when the citizenship of each plaintiff is diverse from that of all defendants. See e.g. Zambelli, 592 F.3d at 418.

As an LLC, CMGK's citizenship is "determined by the citizenship of its members." Id. at 420. Here, the Court agrees with the assessment of the parties that CMGK's sole member is a citizen of Arizona, thus making CMGK a citizen of Arizona. Dkt. 7-1 at 5; Dkt. 12 at 6. The Court and the parties also agree that, pursuant to 28 U.S.C. § 1441(a)(2), no defendant can be a citizen of the forum state—New Jersey. Dkt. 7-1 at 9;

3

Dkt. 12 at 1. Taken together, Lloyd's bears the burden of establishing complete diversity jurisdiction by showing that it is not a citizen of Arizona and New Jersey. The parties disagree on whether this burden has been met.

Before proceeding, however, it is important to note that "special issues arise in a diversity case in which an underwriter from Lloyd's of London is one of the parties." Twp. of Neptune v. Garden State Mun. Joint Ins. Fund, No. 3:18-cv-16448, 2019 WL 4687004, at *3 (D.N.J. Sept. 26, 2019). Therefore, "[a]n understanding of Lloyd's is helpful at the outset." Chem. Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co., 177 F.3d 210, 221 (3d Cir. 1999).

"Lloyd's is not an insurance company, but rather is an exchange or market where various individuals or groups bid on the right to insure a given risk." Id. Instead of insuring risks itself, Lloyd's "provides the physical premises and the administrative services . . . to enable insurance underwriters to carry on their business." Id. By paying a membership fee and meeting other requirements, individuals can underwrite risks through the Lloyd's insurance market. Id. These individuals, variously referred to as "members, underwriters, or names," come together in groups called "syndicates." Id. Each syndicate is managed by an "active underwriter"—an individual with the authority to bind syndicates, and the names within them, to selected risks. Id. at 222. A syndicate itself is not a legal entity and does not assume risk. Id. Instead, to varying degrees, the names assume liability for each policy. Id.

CMGK's policy was insured by Syndicates 510, 1880, and 4141. Syndicates 1880 and 4141 are not at issue in this case, as each is funded entirely by a single name which provided all the capital for that syndicate. In both cases, the name is a UK corporation, which does not disturb diversity of citizenship. Dkt. 12-2 at 2; Dkt. 12-3 at 2.

Syndicate 510, however, has 1,627 members, with the record only reflecting the identity and citizenship of one—Tokio Marine Underwriting Limited ("Tokio"). Dkt. 13-1, Ex. "A" at 12, 64. Tokio accounts for 56% of Syndicate 510's capital; however, the remaining 44% is provided by unidentified names, thus leaving the citizenship of 1,626 names completely unknown. Id. The parties disagree on whether complete diversity should be determined by the citizenship of all names constituting Syndicate 510.

In opposing remand, Lloyd's argues that Syndicate 510's citizenship should be based on that of Tokio and not the individual names. Dkt. 12 at 8. In making this argument, Lloyd's relies on the Sixth Circuit's ruling in Certain Interested Underwriters at Lloyd's v. Layne, 26 F.3d 39 (6th Cir. 1994), which found that the citizenship of a syndicate's active underwriters, not names, was relevant for diversity purposes. Relying on Tennessee state law on agency, Layne reasoned that a party who deals with a Llyod's syndicate may sue the active underwriter or names, but not both. Id. at 43. Because the litigants in that case counterclaimed against Lloyd's underwriters, the court found that the names were "not real parties in interest" and thus not relevant for diversity purposes. Because of its reliance on Tennessee state law, however, the decision in Layne has already been classified as "legally . . . distinguishable" by other cases in this district. See e.g. Lowsley–Williams v. N. River Ins. Co., 884 F.Supp. 166, 171 (D.N.J. 1995) (declining to follow Layne because it was based on Tennessee state law); D'Andrea Constr. Co. v. Old Republic, No. 13–997, 2014 WL 5018885, at *3 (D.N.J. 2014) (finding the defendant's reliance on Layne "not persuasive [because] the decision . . . was strongly based on Tennessee state agency law"). Even more, Lloyd's acknowledges that CMGK has brought suit against "each member of each [s]yndicate." Dkt. 12 at 9. This

5

further distinguishes Layne, as it shows that the members of Syndicate 510 are real parties in interest.

CMGK contends that complete diversity has not been established, arguing that Syndicate 510's citizenship must be based on all of its names. Dkt. 13 at 1. In support of this position, CMGK relies on the Third Circuit's decision in Chemical Leaman Tank Lines v. Aetna Casualty & Surety Co., 177 F.3d 210 (3d Cir. 1999). The Court finds this argument persuasive.

In Chemical Leaman, the insured originally brought suit against "Certain Underwriters at Lloyd's," but later amended its complaint to sue just one underwriter in his individual capacity. Id. at 222. Since the individual underwriter was the only underwriter named in the complaint, the Third Circuit concluded that only his citizenship was relevant to the determination of diversity jurisdiction. Id. at 223. "Therefore, had the complaint named a group of underwriters, as it does in the current case, the Court would have considered the citizenship of all the Names within that particular syndicate." D'Andrea, 2014 WL 5018885, at *5. Because the instant Complaint has been brought against "Certain Underwriters at Lloyd's London Subscribing to Policy Number ME100504," the citizenship of all names within Syndicates 510, 1880, and 4141 must be considered for purposes of diversity jurisdiction. This conclusion is in line with various other decisions in this district. See e.g. Twp. of Neptune, 2019 WL 4687004, at *3; Underwriters at Lloyd's v. VMA Constr., *LLC*, No. 17–5626, 2018 WL 314815, at *3 (D.N.J. Jan. 5, 2018); D'Andrea, 2014 WL 5018885, at *5; Lowsley–Williams, 884 F.Supp. at 173.

Considering the citizenship of each name within a Lloyd's syndicate also purports with the business structure of syndicates. Although not classified as a specific legal

6

entity, "this Court is inclined to conclude that a Lloyd's syndicate is analogous to a limited partnership." D'Andrea, 2014 WL 5018885, at *4 (quoting Lowsley–Williams, 884 F.Supp. at 170 (internal quotations omitted)).

> Like membership in a partnership, membership in a Lloyd's syndicate is personal and not transferable and terminates upon the death of the member. Members have unlimited personal liability, although only for each individual's share of the loss. Syndicates are like limited partnerships in that members have no management authority and cannot bind their fellow members or the syndicate.

Lowsley–Williams, 884 F.Supp. at 171–72 (quoting Int'l Ins. Co. v. Certain Underwriters at Lloyd's London, 1991 U.S. Dist. LEXIS 12937, at *7–8 (N.D.Ill.1991)). Under the Supreme Court ruling of Carden v. Arkoma Associates, 494 U.S. 185 (1990), the citizenship of partnerships—as well as all other unincorporated entities—are determined by the citizenship of every member. Lloyd's responds by arguing that even if all the names of Syndicate 510 are considered for jurisdictional purposes, complete diversity should still be found because of the statements contained in its Notice of Removal and related affidavits. Dkt. 12 at 7. But these filings do not establish Syndicate 510's diversity.

The Notice of Removal states that "[t]he underwriting members of the three Llyod's syndicates subscribing to Policy Number ME100504 are corporations organized under the laws of United Kingdom." Dkt. 1 at 2. As we have seen, however, Syndicate 510 has 1,627 underwriting members, making it extremely unlikely that each is a "corporation[] organized under the laws of United Kingdom." Instead, the members of Syndicate 510 are likely a mixture of corporations, unincorporated entities, and individuals.

In recognition of this potentially diverse composition, Lloyd's submits a supporting affidavit—the Declaration of Thomas Egglestone on Behalf of Syndicate 510. It alleges that "all active members [in Syndicate 510] had to declare residency in the UK for tax purposes . . . [which] required any non-United Kingdom tax resident members to convert to underwriting through a United Kingdom tax resident entity." Id. at 2. This statement is also lacking though, for whatever such a process means for an individual's finances, it does not confer citizenship for diversity purposes.

Citizenship is "synonymous with domicile," which, for an individual, is the "true, fixed and permanent home and place of habitation . . . the place to which, whenever he is absent, he has the intention of returning." McCann v. Newman Irrevocable Tr., 458 F.3d 281, 286 (3d Cir. 2006) (quoting Vlandis v. Kline, 412 U.S. 441, 454 (1973) (internal citations omitted)). Thus, "domicile is established by an objective physical presence in [a] state or territory coupled with a subjective intention to remain there indefinitely." Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir. 2011) (citing Frett–Smith v. Vanterpool, 511 F.3d 396, 400–01 (3d Cir. 2008)). In determining the presence of such criteria, courts consider a host of factors, including declarations, personal taxes, house of residence, location of spouse and family, place of business, location of bank accounts, exercise of political rights, membership in unions, and driver's license and vehicle registration. Id. (quoting McCann, 458 F.3d at 286).

An individual's tax status is thus only one factor in determining citizenship. To make a full determination concerning the citizenship of Syndicate 510's members, this Court would need additional information, not the least of which being the identity and current place of habitation for each member.

It is also worth mentioning that the United States' Internal Revenue Code requires "underwriting income other than that derived from sources within the United States . . . [to] be treated in full as taxable income from sources without the United States." I.R.C. § 862(a)(7), (b). The fact that the members of Syndicate 510 are required to engage with a tax entity in the United Kingdom does not mean that they are immune from filing taxes in the United States. Thus, even in the narrow realm of personal taxes, Lloyd's affidavit does not provide complete detail on each member.

Because citizenship in a suit against "Certain Underwriters at Lloyd's" is determined by the citizenship of all participating names, Lloyd's should have pled the citizenship of each name participating in Syndicate 510. The Notice of Removal, Opposition to Motion to Remand, and Declarations of Thomas Egglestone, all fail to state the citizenship of these names and thus fail to plead complete diversity. By failing to plead complete diversity, Lloyd's, as the removing defendant, has failed to carry its "heavy burden" of proving no jurisdictional defect. Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009) (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993)). As a result, this Court lacks subject matter jurisdiction over the instant dispute.

**B. Amount in Controversy**

Because this Court finds that complete diversity does not exist, it need not consider whether the amount in controversy requirement is met. Jurisdiction is already lacking.

## IV. Conclusion

For the reasons set forth above, the Motion to Remand is GRANTED. This matter is therefore REMANDED to the Superior Court of New Jersey, Law Division, Atlantic County.

Dated: June 24, 2021

/s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE